# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2040

_____

| | | |
|---|---|---|
| Kevin J. Morse, | * | |
| | * | |
| Appellant, | * | |
| | * | On Petition for Review from the |
| v. | * | United States Tax Court. |
| | * | |
| Commissioner of Internal Revenue | * | |
| Service, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  February 17, 2005
Filed:  August 22, 2005

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Kevin J. Morse appeals the tax court's[1] decision ordering him to pay tax deficiencies and civil fraud penalties under 26 U.S.C. § 6663 for unreported income during the years 1991 through 1994.  Morse challenges the tax court's finding of fraud, and he argues because a district court previously ordered him to pay $61,700 in restitution for the same unpaid taxes after a criminal conviction for filing false income tax returns under 26 U.S.C. § 7206(1), the doctrines of res judicata, collateral

_____

[1]The Honorable Julian I. Jacobs, United States Tax Court.

estoppel, and double jeopardy prevent the Commissioner of Internal Revenue from relitigating the amount of tax liability and imposing additional penalties. The tax court had jurisdiction to hear this case under 26 U.S.C. §§ 6213, 6214, and 7442. This court has jurisdiction over the appeal under 26 U.S.C. § 7482, and we affirm.

I

In April 1998, Morse, a farmer, was indicted in the United States District Court for the District of Minnesota on four counts of filing false income tax returns in violation of 26 U.S.C. § 7206(1). The indictment charged that for four years (1991-1994), he willfully made and subscribed to federal income tax returns that he did not believe to be true and correct as to every material matter. He was tried and convicted on all four counts, and this court affirmed his conviction. See United States v. Morse, 210 F.3d 380 (8th Cir. 2000). Morse was sentenced to 18 months imprisonment, and he was ordered to pay $61,700 in restitution to the Internal Revenue Service (IRS), an additional $10,000 fine, and $3,379.62 for prosecution costs. By September 14, 1999, he paid the amount ordered.

On August 17, 2000, the Commissioner sent Morse a statutory notice of deficiency, which noted deficiencies in federal income tax plus civil fraud penalties for the same years (1991-1994). Morse contested the deficiency and penalties in the tax court. He challenged the Commissioner's evidence of fraud, and he asserted the doctrines of res judicata, collateral estoppel, and double jeopardy precluded the Commissioner from relitigating the amount of tax liability because he already paid criminal restitution to the government.

At trial, the parties stipulated to the amount of Morse's unreported income: $75,799 in 1991, $39,900 in 1992, $24,481 in 1993, and $68,713 in 1994. After both parties presented their cases, the tax court found Morse liable for tax deficiencies plus additional fraud penalties for each year. The tax deficiencies were $14,437 for 1991,

$7,300 for 1992, $2,698 for 1993, and $27,198 for 1994. The fraud penalties (75 percent of the tax deficiencies) were $10,827.75 for 1991, $5,497.50 for 1992, $2,023.50 for 1993, and $20,398.50 for 1994.

## II

### A

Morse first challenges the district court's finding of fraud. We review this factual finding for clear error. Scallen v. Commissioner, 877 F.2d 1364, 1369 (8th Cir. 1989). 26 U.S.C. § 6663(a) provides if any part of a tax underpayment is due to fraud, 75 percent of the fraudulent underpayment is added to the tax. Thus, the Commissioner must show (1) there was an underpayment of tax,[2] and (2) part of the underpayment was due to fraud. Id. § 6663(a). If the Commissioner proves any portion of the underpayment is attributable to fraud, the entire underpayment is considered fraudulent unless the taxpayer establishes which portions are not fraudulent. Id. § 6663(b); Scallen, 877 F.2d at 1369. The Commissioner has the burden to prove fraud by clear and convincing evidence. Scallen, 877 F.2d at 1369; 26 U.S.C. § 7454(a).

To support a finding of fraud, the Commissioner must show the taxpayer intended to evade taxes he knew or believed to be owing by conduct intended to

---

[2]Morse argues "the checks offered as evidence of omitted income [by] the Commissioner were [not] supported by competent foundation," Appellant's Br. at 25, and "[i]f the amount represented by all these checks is not accepted as valid evidence, then any amount allegedly under-reported by Kevin Morse would have to be reduced by the sum total of these questionable checks and then the taxes would have to be determined on this lower amount," Appellant's Br. at 26. We note the Commissioner presented these checks as evidence of fraud, not as evidence of omitted income. Morse stipulated to the amount of income he omitted from his income tax returns in each relevant year.

conceal, mislead, or otherwise prevent their collection. Spies v. United States, 317 U.S. 492, 499 (1943). Fraud may be inferred from "any conduct, the likely effect of which would be to mislead or conceal." Id. After evaluating the evidence at trial, the tax court found Morse had the requisite fraudulent intent. The court based its finding on three "badges of fraud": (1) substantially understating income for four years without a satisfactory explanation (his explanation was that the omitted income "must not have got in to the tax preparer"); (2) providing incomplete information to his tax preparer; and (3) being convicted of filing false tax returns under 26 U.S.C. § 7206(1). See Spies, 317 U.S. at 499 (identifying various "badges of fraud"); see also Klassie v. United States, 289 F.2d 96, 101 (8th Cir. 1961) ("A consistent pattern of underreporting large amounts of income over a period of years is substantial evidence bearing upon an intent to defraud, particularly where the reason for such understatement is not satisfactorily explained . . . ."); Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986) (finding taxpayer's provision to bookkeeper of only a summary of his retail sales that omitted a portion of those sales constituted evidence of fraud); First Trust & Sav. Bank v. United States, 206 F.2d 97, 100 (8th Cir. 1953) ("[T]he filing of false returns is affirmative fraudulent conduct which is adapted to bring about deficiency of tax and an intent to evade tax may be inferred from it.").

Morse argues because the Commissioner did not plead collateral estoppel, the Commissioner cannot offensively use his criminal conviction to establish fraud. The Commissioner, however, did not seek to estop Morse from contesting fraud liability by entering his criminal conviction as evidence.[3] Rather, the Commissioner used Morse's criminal conviction as probative evidence of fraud, an issue on which Morse was free to present his own evidence. See Klassie, 289 F.2d at 102; Considine v. United States, 683 F.2d 1285, 1287 (9th Cir. 1982); Wright v. Commissioner, 84 T.C.

---

[3]Indeed, the tax court noted the Commissioner could not use collateral estoppel to establish civil fraud liability "because a conviction under section 7206(1) does not require a showing that the taxpayer willfully attempted to evade tax." Tax Court Op. at 10.

636, 643-44 (1985). The conviction—together with consistent underreporting of income, lack of a satisfactory explanation, and failure to provide the tax preparer with complete information—provide a substantial body of evidence to support the tax court's finding of fraud. We find no clear error in the tax court's conclusion that this evidence is clear and convincing.

B

Next, Morse argues the doctrines of res judicata and collateral estoppel preclude relitigation of his tax liability because he was already ordered to pay $61,700 in restitution to the IRS. Whether either doctrine applies is a question of law, which we review de novo. United States v. Brekke, 97 F.3d 1043, 1046-47 (8th Cir. 1996). We conclude neither doctrine precludes the imposition of civil liability for tax deficiency or fraud penalties.

Under the doctrine of res judicata, when a court enters a final judgment on the merits of a cause of action, "the parties and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Commissioner v. Sunnen, 333 U.S. 591, 597 (1948) (quoting Cromwell v. County of Sac., 94 U.S. 351, 352 (1876)); see also Brekke, 97 F.3d at 1047. Morse believes res judicata prevents the Commissioner from seeking a civil fraud penalty because in the criminal prosecution, the prosecutor "could have, as a matter of judicial economy, asserted an additional amount [of restitution] equal to the fraud penalty, but did not." Appellant's Br. at 18.

Res judicata is available only where "(1) the prior judgment was entered by a court of competent jurisdiction; (2) the decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. Brekke, 97 F.3d at 1047. We conclude res judicata is inapplicable here

because a criminal prosecution for filing false income tax returns does not involve the same "cause of action" as a civil tax deficiency case. "The government may have both a civil and a criminal cause of action as a result of a single factual situation," and thus the government does not surrender its right to seek civil fraud penalties by undertaking a criminal tax prosecution. Id.; see also United States v. Barnette, 10 F.3d 1553, 1562 (11th Cir. 1994) (noting absence of "any case from any jurisdiction that even hints that a prior criminal restitution order is res judicata against a subsequent damages action"). Because the criminal prosecution and the civil fraud action are distinct causes of action, the civil fraud claim is not barred by res judicata.

Morse also argues the doctrine of collateral estoppel bars the Commissioner from relitigating the amount of tax liability, as that amount was already determined to be $61,700 in his criminal restitution order. Collateral estoppel bars relitigation of an issue where (1) the party sought to be precluded in the second suit was a party, or privy to a party, in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was "actually litigated" in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was "essential to the judgment." Anderson v. Genuine Parts Co., 128 F.3d 1267, 1273 (8th Cir. 1997).

We conclude collateral estoppel is also inapplicable here. An order for criminal restitution is not essential to the judgment of conviction against a criminal defendant "because it [is] not an element of the crime of conviction." Hickman v. Commissioner, 183 F.3d 535, 538 (6th Cir. 1999). In a criminal conviction, the "jury [is] not asked to determine [a] specific tax liability [and] the district judge enjoy[s] considerable discretion as to whether he should order restitution, and if so, as to the amount. Id.; see also United States v. Helmsley, 941 F.2d 71, 102 (2d Cir. 1991) (stating where tax evader is required to pay restitution for tax loss, the government may also seek to collect "unpaid taxes, penalties and interest in a civil proceeding"). Because the amount of restitution was not essential to the judgment in the criminal

prosecution, the Commissioner is not precluded from litigating Morse's civil tax liability.[4]

C

Finally, Morse argues the civil fraud penalties violate the Double Jeopardy Clause of the Fifth Amendment, as he has already been punished for the same conduct. Morse's double jeopardy claim is a legal question, which we review de novo. Brekke, 97 F.3d at 1046.

The Double Jeopardy Clause protects against "multiple *criminal* punishments for the same offense." Hudson v. United States, 522 U.S. 93, 99 (1997). The Supreme Court instructed in Hudson, "whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." Id. at 99. Civil fraud penalties are imposed administratively, see 26 U.S.C. § 6665, and the Supreme Court has stated this is "prima facie evidence that Congress intended to provide for a civil sanction," Hudson, 522 U.S. at 103. We will only override the legislature's intent where the statutory scheme is "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Id. at 99 (quotations and citations omitted). We believe § 6663 is remedial, rather than

---

[4]As the tax court noted, payments made under the district court's restitution order in the criminal proceeding should be credited against the civil tax deficiency judgment. Tax Court Op. at 16 (noting tax court has jurisdiction under 26 U.S.C. § 6512(b) to determine whether Morse has overpayed his tax liability, and noting "[t]hat is so whether payments were made under the District Court's restitution order or for any other reason"); see also Helmsley, 941 F.2d at 102 ("[W]e believe it is self-evident that any amount paid as restitution for taxes owed must be deducted from any judgment entered for unpaid taxes in . . . a civil proceeding."); cf. United States v. Tucker, 217 F.3d 960, 962 (8th Cir. 2000) ("Of course, any amounts paid to the IRS as restitution must be deducted from any civil judgment IRS obtains to collect the same tax deficiency.").

-7-

punitive, in nature and therefore should not be regarded as a criminal penalty for double jeopardy purposes.

In Helvering v. Mitchell, 303 U.S. 391 (1938), the Supreme Court directly addressed whether the constitutional protection against double jeopardy barred a civil fraud penalty where a taxpayer had previously been subjected to criminal prosecution for willfully attempting to evade and defeat the tax.[5]  The Court held the penalty was remedial rather than punitive, as it was enacted "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud."  Id. at 401.  It has become well-established that such civil fraud penalties are remedial rather than punitive.  See I & O Publ'g Co. v. Commissioner, 131 F.3d 1314, 1316 (9th Cir. 1997) ("Mitchell is alive and well in this circuit, as in others."); United States v. Alt, 83 F.3d 779, 782-83 (6th Cir. 1996) (holding 50 percent and 75 percent additions to the tax for fraud under former § 6653 were civil rather than punitive for double jeopardy purposes); Thomas v. Commissioner, 62 F.3d 97, 100 (4th Cir. 1995) ("For over fifty years, the addition to the tax [for fraud] has been regarded as remedial, rather than punitive, in nature.").  Morse has brought nothing to our attention to distinguish this case from Mitchell, and we therefore find § 6663's civil fraud penalties (75 percent of the fraudulent underpayment) to be remedial in nature.  The penalties are therefore not barred by the Double Jeopardy Clause.

III

For the reasons provided above, we affirm the tax court's decision.

_____

[5]In Mitchell, the fraud statute provided, "if any part of any deficiency is due to fraud with intent to evade tax, the 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed and paid."  See Mitchell, 303 U.S. at 391.