# United States Bankruptcy Appellate Panel

## FOR THE EIGHTH CIRCUIT

-------------------

No. 05-6052 ND

-------------------

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Racing Services, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Susan Bala, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Claimant - Appellant, | * | District of North Dakota |
| | * | |
| v. | * | |
| | * | |
| Kip M. Kaler, Chapter 7 Trustee, | * | |
| | * | |
| Objector - Appellee, | * | |
| | * | |
| and | * | |
| | * | |
| State of North Dakota | * | |
| ex rel. Wayne Stenehjem, | * | |
| | * | |
| Objector - Appellee. | * | |

-------------------

Submitted: March 14, 2006
Filed: April 4, 2006

-------------------

Before SCHERMER, FEDERMAN, and MCDONALD, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Susan Bala ("Claimant") appeals the bankruptcy court's[1] order subordinating her administrative expense claim against the bankruptcy estate of Racing Services, Inc. ("RSI") for post-petition rent. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUES

The issue on appeal is whether the bankruptcy court abused its discretion when it equitably subordinated the Claimant's administrative expense claim to the claims of all other creditors of RSI. In order to answer this question, we must decide if the bankruptcy court erred when it held that the Claimant's misconduct resulted in injury to the creditors of RSI. We must also decide whether equitable subordination is consistent with the provisions of the Bankruptcy Code. We conclude that the bankruptcy court did not err when it held that the Claimant's misconduct resulted in injury to the creditors of RSI and that equitable subordination is consistent with the Bankruptcy Code. Accordingly, we conclude that the bankruptcy court did not abuse its discretion when it equitably subordinated the Claimant's claim.

## BACKGROUND

The Claimant was the founder of RSI and its sole shareholder. She served as its chief executive officer and president. The Claimant owned an office building located at 901 28th Street SW, Fargo, North Dakota (the "Office Building"). In

---

[1]The Honorable William A. Hill, United States Bankruptcy Judge for the District of North Dakota.

June, 1997, RSI entered into a five year lease of the Office Building with the Claimant. RSI exercised an option to renew the lease for an additional five years through May 31, 2007.

RSI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 3, 2004. The case was converted to a case under Chapter 7 of the Bankruptcy Code on June 15, 2004. Kip M. Kaler ("Trustee") was appointed Trustee of RSI's Chapter 7 bankruptcy estate.

At the time of the bankruptcy filing, RSI occupied the Office Building. No action was taken to assume or reject the lease. Nonetheless, RSI continued to occupy the Office Building, primarily for storage, until the Claimant sold the Office Building to a third party on December 10, 2004.

On June 10, 2005, the Claimant filed an application for allowance of administrative expense ("Application") for post-petition rent due under the lease of the Office Building for the period from February 3, 2004, through December 10, 2004. The Trustee objected to the Application arguing that any administrative expense claim of the Claimant should be subordinated to all other claims. The State of North Dakota, ex rel. Wayne Stenehjem, Attorney General ("North Dakota") also objected to the Application and argued that any claim of the Claimant should be equitably subordinated. North Dakota is the holder of a priority claim against RSI's bankruptcy estate in the approximate amount of $6,000,000.

On July 20, 2005, criminal judgments were entered against RSI and the Claimant on twelve counts including money laundering and conducting illegal gambling operations. As part of the criminal conviction, the United States of America ("United States") received a forfeiture judgment against RSI in the amount of $99,013,200.

The bankruptcy court conducted a hearing on the Claimant's Application on August 24, 2005. The criminal judgments against the Claimant and against RSI including the forfeiture judgment against RSI were entered into evidence at the hearing. A stipulation between the Trustee and the United States was also presented wherein the Trustee and the United States agreed to divide the assets of the RSI bankruptcy estate in settlement of the United States's asserted right to all estate assets pursuant to the forfeiture judgment.[2] At the time of the hearing, the estate had assets of less than $600,000. The bankruptcy court took the matter under advisement and issued its Memorandum and Order dated September 9, 2005, allowing the Claimant's administrative expense claim for rent and equitably subordinating the claim to all other allowed claims. The Claimant appealed that portion of the Order equitably subordinating her claim.

## STANDARD OF REVIEW

We review the bankruptcy court's equitable subordination of the Claimant's claim for an abuse of discretion. *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 583 (9th Cir. 1998); *Official Unsecured Creditors Committee of Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp. (In re Valley-Vulcan Mold Co.)*, 237 B.R. 322, 326 (B.A.P. 6th Cir. 1999); *Katz v. Department of Justice, Tax Division (In re Bellucci)*, 29 B.R. 814, 815 (B.A.P. 1st Cir. 1983). An abuse of discretion occurs if the court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

---

[2]The settlement agreement was later set aside on appeal because no hearing was conducted prior to its approval. Therefore, the settlement agreement which was presented at the hearing on the allowance and subordination of the claim is no longer in effect.

**DISCUSSION**

A bankruptcy court may, under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim. 11 U.S.C. § 510(c)(1). Equitable subordination was originally a judicially created remedy which was incorporated into the Bankruptcy Code in 1978.[3] Courts have adopted a three-part test to determine whether equitable subordination is appropriate: (1) the claimant must have engaged in some type of inequitable conduct; (2) the claimant's misconduct resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code. *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1282 (8th Cir. 1988); *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699-700 (5th Cir. 1977).

The Claimant does not dispute that her criminal behavior constitutes inequitable conduct satisfying the first prong of the test. However she does note that her inequitable conduct has no relationship to her administrative rent claim. [Appellant's Brief, p. 10.] The inequitable conduct need not be related to the claim to support equitable subordination. *Bostian v. Shapiro (In re Kansas City Journal-Post Co.)*, 144 F.2d 791, 804 (8th Cir. 1944); *Mobile Steel*, 563 F.2d at 700. Therefore, the Claimant's criminal behavior is sufficient to support the subordination of her rent

---

[3]In 1978 Congress passed An Act to Establish a Uniform Law on the Subject of Bankruptcies, Pub. L. No. 95-598, 92 Stat. 2549. The 1978 act is commonly referred to as the Bankruptcy Code and is codified as amended at 11 U.S.C. §§ 101 - 1532. The legislative history to Section 510(c) indicates Congress' intent that subordination under the Bankruptcy Code should be based on the principles of equitable subordination developed through case law. S. REP. NO. 95-989, at 74 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5860.

claim even though the criminal behavior was unrelated to the lease of the Office Building to RSI.

The Claimant disputes the bankruptcy court's conclusion that her misconduct resulted in injury to RSI's creditors.[4] The Claimant's misconduct as the principal of RSI resulted in the criminal conviction of RSI and the entry of the $99,013,200 forfeiture judgment in favor of the United States. The creditors of RSI were injured by the entry of the forfeiture judgment. The liability in excess of $99 million at the very least dilutes any distribution to the other creditors and at worst entitles the United States to seize all property of RSI's bankruptcy estate, leaving nothing for other creditors. This alone is injury to RSI's other creditors warranting equitable subordination of the Claimant's claim.

The Claimant argues that the bankruptcy court erroneously relied on the stipulation between the Trustee and the United States as evidence of harm to other creditors. Under the stipulation the Trustee agreed to transfer certain assets of RSI's bankruptcy estate to the United States in settlement of the United States' forfeiture judgment.[5] In so doing, the other creditors lost the benefit of the proceeds of the transferred assets. The Claimant asserts that the value of the transferred assets was never quantified and therefore no harm to other creditors was established by the stipulation. The Claimant further argues that the stipulation cannot form the basis of any finding of harm because its approval was reversed on appeal. We need not address these arguments because the stipulation is not necessary to establish harm to

---

[4]The bankruptcy court did not find that the Claimant's illegal conduct gave her an unfair advantage over other creditors of RSI, nor has anyone alleged an unfair advantage. Therefore, this alternative theory of the second prong of the equitable subordination test need not be addressed.

[5]The stipulation was an attempt by the Trustee to minimize the harm to other creditors resulting from the forfeiture judgment.

other creditors. Rather, as stated above, the mere entry of the $99,013,200 forfeiture judgment injured the other creditors.

Next, the Claimant argues that general unsecured creditors are not harmed by the forfeiture judgment because their claims are junior to the priority claim of the North Dakota and the estate assets are nowhere near sufficient to satisfy North Dakota's $6,000,000 claim. In short, general unsecured creditors will get nothing, regardless of the forfeiture judgment. The standard for equitable subordination requires injury to creditors, not injury to any particular class of creditors such as general unsecured creditors. North Dakota is a creditor who is injured by the forfeiture judgment which gives the United States the right to assert a claim to assets before any distribution on account of North Dakota's priority claim. This is sufficient injury to warrant equitable subordination of the Claimant's claim. Furthermore, even if RSI's bankruptcy estate is hopelessly insolvent, this fact does not erase the harm inherent in the entry of the $99,013,200 forfeiture judgment.

The Claimant argues that the bankruptcy court erred in basing its finding of harm to RSI's creditors on the statement that but for the Claimant's criminal activities RSI likely would not have ended up in bankruptcy. The Claimant argues that the record does not support such a finding. We need not address the correctness of this finding because it is not necessary to satisfy the second prong of the equitable subordination test. Injury to creditors is established by the forfeiture judgment and no additional evidence is necessary to warrant subordination.

Finally, the Claimant argues that the equitable subordination of her administrative expense claim is inconsistent with Section 365(d)(3) and (4) of the Bankruptcy Code. Section 365(d)(3) of the Bankruptcy Code requires a trustee to timely perform the obligation to pay rent under an unexpired lease of nonresidential real property until the lease is assumed or rejected. Section 365(d)(4) as in effect at the time this case was filed deemed a lease of nonresidential real property rejected

sixty days after the petition date unless affirmative action was taken to assume the lease or to extend the period to assume or reject the lease.[6] According to the Claimant, these subsections of the Bankruptcy Code make it clear that the bankruptcy estate's performance of post-petition rent obligations under a lease of nonresidential real property is mandatory. To subordinate the Claimant's rent claim is inconsistent with the special treatment of nonresidential real property leases and post-petition rent obligations thereunder required in Section 365(d)(3) and (4) of the Bankruptcy Code. We disagree.

First, equitable subordination of an administrative expense claim for rent is not inconsistent with Section 365(d)(3) and (4) of the Bankruptcy Code. Equitable subordination is expressly authorized in Section 510(c)(1) of the Bankruptcy Code. Neither Section 365 nor Section 510 of the Bankruptcy Code contain any language limiting a bankruptcy court's authority to equitably subordinate a claim in the lease context. Quite simply, the two sections of the Bankruptcy Code are not inconsistent.

Furthermore, the Claimant puts too much emphasis on the third prong of the equitable subordination test. As previously noted, equitable subordination is a judicially created doctrine. Prior to its codification in 1978, bankruptcy courts relied on their inherent power as courts of equity to prevent a course of action which would reward fraudulent or otherwise inequitable conduct by subordinating certain claims to other ethically superior claims. *Mobile Steel Co.*, 563 F.2d at 698-99, citing *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970, 976 (1946); *Pepper v. Litton*, 308 U.S. 295, 304-05, 60 S.Ct. 238, 244, 84 L.Ed. 281, 287-88 (1939); *DeMet v. Harrison*, 399 F.2d 35, 38 (5th Cir. 1968). The third prong of the equitable

---

[6]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended Section 365(d)(4) to extend the deadline to assume or reject a lease of nonresidential real property to the earlier of 120 days after the petition or the entry of a plan confirmation order. Pub. L. No. 109-8, 119 Stat. 82, 100, 104.

subordination test prevented bankruptcy courts from ignoring the language of the bankruptcy laws in the name of equity. When Congress passed the current Bankruptcy Code in 1978, it expressly authorized equitable subordination. Therefore, any exercise of authority under Section 510(c)(1) of the Bankruptcy Code is not inconsistent with the Code unless it ignores the Code's language. In the instant case, the bankruptcy court followed the statutory language of Section 510(c)(1) of the Bankruptcy Code and therefore the equitable subordination of the Claimant's claim was in accordance with the Bankruptcy Code.

## CONCLUSION

The bankruptcy court did not abuse its discretion in equitably subordinating the Claimant's administrative expense claim to the claims of other creditors of RSI. The bankruptcy court applied the correct law and properly found that each element required for equitable subordination of the Claimant's claim had been satisfied. Accordingly, we AFFIRM the bankruptcy court's order equitably subordinating the Claimant's administrative expense claim for unpaid post-petition rent to all other claims against RSI.

---